MICHAEL H. BOYAMIAN, SBN 256107
michael@boyamianlaw.com
ARMAND R. KIZIRIAN, SBN 293992
armand@boyamianlaw.com @gmail.com
**BOYAMIAN LAW, INC.**
550 No. Brand Blvd., Suite 1500
Glendale, California 91203
Telephone:  (818) 547-5200
Facsimile:   (818) 500-9307

Attorneys for Plaintiff CHRISTIAN MATUTE,
Individually and on Behalf of All Similarly Situated Individuals

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN MATUTE, an individual; Individually and on Behalf of All Similarly Situated Individuals, <br><br> Plaintiffs, <br><br> v. <br><br> PILOT AIR FREIGHT LLC, dba PILOT FREIGHT SERVICES, a Pennsylvania Limited Liability Company; BEST BUY CO., INC., a Minnesota Corporation; and DOES 1-25, Inclusive, <br><br> Defendants. | Case No. CV 4:22-cv-00587-YGR <br><br> *[The Honorable Yvonne Gonzalez Rogers]* <br><br> <u>**CLASS ACTION**</u> <br><br> **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:    January 23, 2024 <br> Time:    2:00 p.m. <br> Ctrm:    1 (4th Floor) Oakland <br><br> [FILED CONCURRENTLY WITH THE DECLARATION OF MICHAEL H. BOYAMIAN; DECLARATION OF CASSANDRA POLITES RE: SETTLEMENT ADMINISTRATION; [PROPOSED] ORDER] |

1

2

**NOTICE OF MOTION AND MOTION TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

4

5

6

7

8

9

**PLEASE TAKE NOTICE** that on January 23, 2024 at 2:00 p.m., or as soon thereafter as the matter can be heard in Courtroom 1 of the United States District Courthouse located at 1301 Clay Street, Oakland, California 94612, before the Honorable Yvonne Gonzalez Rogers, Plaintiff Christian Matute ("Plaintiff") on behalf of himself and the certified class, will and hereby does move this Court for entry of an Order Granting Final Approval of Class Action Settlement. Plaintiff's proposed Judgment and Order is lodged concurrently herewith.

10

11

12

13

14

This notice and motion are made pursuant to Rule 23 of the Federal Rules of Civil Procedure and on the grounds that the proposed Settlement is fair, reasonable and adequate and in the best interests of the proposed class. The motion is unopposed by Defendants Pilot Air Freight LLC., dba Pilot Freight Service, and Best Buy Co., Inc., who are parties to the proposed Settlement.

15

16

17

18

19

20

21

22

23

24

Plaintiff respectfully requests that the Court: (1) grant final approval of the proposed Settlement[1]; (2) certify the Class for settlement purposes; (3) find that the Notice was the best practicable notice under the circumstances and satisfied all Constitutional and other requirements; (4) confirm Settlement Class Members who have submitted timely requests for exclusion; (5) confirm as final the Court's preliminary appointment of settlement Class Counsel; (6) confirm as final the Court's preliminary appointment of Christian Matute as the class representative; (7) approve a payment of $24,375 to the California Labor and Workforce Development Agency (LWDA); (8) grant service enhancement awards to class representative Christian Matute in the amount of $10,000.00; (9) grant an award of attorneys' fees[2]

25

26

27

28

---

[1] Capitalized terms herein have the same meaning as in the Settlement Agreement, attached as Exhibit "1" to the Declaration of Michael H. Boyamian in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Boyamian Decl."), filed herewith.

[2] Class Counsel filed their unopposed Motion for Attorneys' Fees, Costs, and Service Award on

of $162,250.00 (25% from the gross settlement amount of $650,000.00) and litigation costs of $18,012.17, for a total fee and expense award of $180,262.17; (10) tentatively award the settlement administrator, ILYM Group, Inc., $12,550 for claims administration expenses; (11) dismiss the action with prejudice pursuant to the terms and conditions of the Settlement Agreement; (12) retain jurisdiction over the enforcement and implementation of the Settlement Agreement; and (13) issue related orders as necessary.

Respectfully Submitted,

Dated: December 19, 2023                BOYAMIAN LAW, INC.

By: /s/ Michael H. Boyamian
MICHAEL H. BOYAMIAN
Attorneys for Plaintiff and the Settlement Class

November 29, 2023.  *See* Dkt. 55.

1

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  FACTUAL BACKGROUND .......................................................................... 2

III. PROCEDURAL HISTORY ............................................................................ 3

IV. TERMS OF THE SETTLEMENT ................................................................. 3

V.  NOTICE PROCESS, OBJECTIONS AND EXCLUSIONS .......................... 4

VI. LEGAL ARGUMENT .................................................................................... 5

    A.  The Settlement Meets the Criteria for Final Approval. ........................ 5

        1.  The Settlement is Fair Given the Strength of Plaintiff's
           Case and the Risk, Expense, Complexity, and Likely
           Duration of Litigation. ................................................................. 6

        2.  The Settlement Consideration and Allocation are Fair. .................... 9

        3.  The Settlement Reflects the Informed Views of
           Experienced Counsel and Is the Product of Serious, Arms-
           Length Negotiations Conducted After Extensive Discovery
           and Investigation. ...................................................................... 11

        4.  The Lack of Opposition by the Class Supports Approval. ............. 12

    B.  Confirmation of the Court's Provisional Class Certification is
        Appropriate ..................................................................................... 13

    C.  The Court-Ordered Notice Program Is Constitutionally Sound. ........ 14

VII. CONCLUSION: THE COURT SHOULD GRANT PLAINTIFF'S
     MOTION FOR FINAL APPROVAL OF THIS SETTLEMENT .......... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Balderas v. Massage Envy Franchising, LLC*
    (N.D. Cal. July 21, 2014) 2014 U.S. Dist. LEXIS 99966 ................................................... 10

*Barcia v. Contain–A–Way, Inc.*
    (S.D. Cal. 2009) 2009 U.S. Dist. LEXIS 17118 .................................................... 12

*Bautista v. Harvest Management Sub*
    (C.D. Cal. July 7, 2014)  No. 2:12-cv-10004 .......................................... 10

*Burns v. Elrod*
    (7th Cir. 1985) 757 F.2d 151 .......................................... 14

*Churchill Vill., LLC*. V. Gen. Elec.
    (9th Cir. 2004) 361 F.3d 566 .......................................... 5, 14

*Class Plaintiffs v. City of Seattle*
    (9th Cir. 1992) 955 F.2d 1268 .......................................... 5

*Eisen v. Carlisle & Jacquelin*
    (1974) 417 U.S. 156 .......................................... 14

*Hanlon v. Chrysler Corp.*
    (9th Cir. 1998) 150 F.3d 1011 .......................................... 5

*In re Omnivision Technologies, Inc.*
    (N.D. Cal. 2008) 559 F. Supp. 2d 1036 .......................................... 12

*Ma v. Covidien Holding, Inc.*
    (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 76359 .......................................... 5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
    (C.D. Cal. 2004) 221 F.R.D. 523.......................................... 12

*O'Sullivan v. AMN Services, Inc.*
    (N.D. Cal. Feb. 7, 2014) 12-cv-2125.......................................... 10

*Rodriguez v. West Publ'g Corp.*
    (9th Cir. 2009) 563 F.3d 948 .......................................... passim

*Scott v. Bimbo Bakeries* USA
    (E.D. Pa. March 5, 2014) No. 2:10-cv-03154 .......................................... 10

*Torrisi v. Tucson Elec. Power Co.*
    (9th Cir. 1993) 8 F.3d 1370 .......................................... 15

*Villegas v. J.P. Morgan Chase & Co.,*
    (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 166704 .......................................... 5, 10, 14

*////*

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
**Case No.  4:22-cv-00587-YGR**

**Statutes**

Rule 23.................................................................................................................... *passim*

**Treatises**

Manual for Complex Litigation (Fourth) § 21.61 (2004).................................................... 5

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
**Case No.  4:22-cv-00587-YGR**

# I.  INTRODUCTION

On August 15, 2023, this Court granted preliminary approval of the class action settlement reached in this action between Plaintiff Christian Matute ("Plaintiff") and Defendants Pilot Air Freight LLC dba Pilot Freight Services, LLC; Best Buy Co., Inc. ("Defendants") ("August 15 Order").  Plaintiff now seeks final approval of the proposed Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

Plaintiff alleges that he and other Settlement Class Members were misclassified as Independent Contractors while performing services for Defendants, and therefore denied the protections of the California Labor Code.  Plaintiff therefore alleged claims for unpaid wages, minimum wages, overtime pay, interest thereon, wage statement and waiting time penalties, and other equitable relief, as well as reasonable attorneys' fees and costs.  Defendants deny Plaintiff's allegations, and the parties reached a settlement of claims that includes a Gross Settlement Amount of six hundred and fifty thousand dollars and zero cents ($650,000.00), which includes attorneys' fees and costs, the payment to the Labor and Workforce Development Agency ("LWDA"), enhancement awards to the class representatives and deposed settlement class members, and court-approved costs of settlement administration.

Notice was mailed to 624 Class Members on October 31, 2023. As explained in detail below, the notice procedures here were adequate.  To date, the reaction of the Class has been unanimously positive.  The postmark deadline for opt-outs, disputes, and objections is December 29, 2023.  As of December 15, 2023, the settlement administrator, ILYM Group, Inc. ("ILYM"), has received zero requests for exclusion from the Settlement.  More significantly, ILYM has received zero objections to the Settlement.  Therefore, thus far, 624 Class Members have chosen to participate in this Settlement and none have opposed it.  Declaration of Cassandra Polites of ILYM Group, Inc. ("Polites Decl."), ¶¶ 7, 11-12.

The current 100 percent participation rate in a Class comprised of several hundred individuals confirms that the Settlement is reasonable and in the best interests of the Class.[3]  Accordingly, Plaintiff respectfully request that the Court grant final approval of the Settlement.

## II.  FACTUAL BACKGROUND

Defendant Pilot is a logistics company that partners with third-party subhaulers who transport goods, including last-mile deliveries, which are the focus of this suit.  Pilot contracts directly with licensed motor carrier Contract Carriers who enter into Subhauler Agreements with Defendants ("primaries") to take responsibility for transportation and to provide the trucks and equipment to facilitate transport.  Subhaulers then contract with drivers and helpers who do not contract with Pilot directly, but who are tendered freight by subhaulers ("secondaries").  Boyamian Decl., ¶ 8.

This freight that Putative Settlement Class Members moved was provided by Defendant Best Buy.  Along with Pilot's personnel, the warehouses that the Contract Carriers, Drivers, and Helpers operated out of were also staffed by employees of Best Buy.  Essentially, while Pilot's role was focused more upon the logistics of planning the deliveries to Best Buy's customers, it is Plaintiff's contention that Best Buy's role was in ensuring that the Contract Carriers, Drivers, and Helpers provided the appropriate customer experience while conducting the deliveries.  Plaintiff Christian Matute drove as a secondary in the form of a Driver and Helper.  Boyamian Decl., ¶ 9.

The Class consists of 624 individuals who currently or formerly performed services for Defendants during the Class Period and identified as Contract Carriers, Drivers, and/or Helpers.  Declaration of Michael Boyamian in Support of Plaintiff's

---

[3] Plaintiff will submit a supplemental declaration from the third-party administrator once the notice period closes to apprise the Court of the final number of opt-outs and/or objections to the proposed Settlement.

Motion for Preliminary Approval of Class Action Settlement ("Boyamian Decl."), ¶ 10.

Plaintiff contends that primaries and secondaries, i.e., the Contract Carriers, Drivers, and Helpers, were not properly paid wages under California law. Defendants maintain that at all times, the Contract Carriers, Drivers, and Helpers utilized by Defendants have been properly paid as independent contractors.

### III.    PROCEDURAL HISTORY

This Motion incorporates by reference the Factual and Procedural Background (Sec. II) of Plaintiff's Motion for Attorneys' Fees and Costs filed on November 29, 2023.  *See* Dkt. 55.

### IV.  TERMS OF THE SETTLEMENT

The complete Settlement Agreement is attached as Exhibit "1" to the Boyamian Decl.

The key terms of the settlement are as follows: Defendants will pay $650,000.00 to the Class to settle this lawsuit.  Settlement, §II (U).  There are 624 Class Members.  Polites Decl., ¶ 7.  Plaintiff's Counsel has the right to seek attorneys' fees from the common fund and has in fact sought attorneys' fees in the amount of $162,500, i.e., 25% of the Gross Settlement Fund.  *See* Notice of Motion for Attorneys' Fees, p. 1; Settlement, § IV(P).  Similarly, Plaintiff's Counsel has the right to seek reimbursement of their reasonable costs from the common fund and has, in fact, requested reimbursement of $18,012.17 in costs.  *See* Notice of Motion for Attorneys' Fees, p. 1; Settlement, § IV(P).  The LWDA will be paid $24,375 out of a total allocation of $32,500 for penalties pursuant to California's Private Attorneys General Act of 2004.  Settlement, § IV(J)(4).  Plaintiff has requested an enhancement award of $10,000 for the class representative.  *See* Notice of Motion for Attorneys' Fees, p. 1; Settlement, § IV(Q).

The complete Stipulation of Class Action Settlement, along with its exhibits, is attached as Exhibit "1" to the Declaration of Michael H. Boyamian, filed

concurrently herewith.

## V.  NOTICE PROCESS, OBJECTIONS AND EXCLUSIONS

With the Court's prior approval, the Settlement designated ILYM as the settlement administrator in this case.  The Settlement provided that ILYM would provide Notice of Settlement of Class Action (the "Notice") by first class mail to the last known addresses of Class Members.  Settlement, ¶ IV(C).

Settlement Class Members have had 60 days to submit the optional Payment Information Form, opt-out, or object to the Settlement.  Settlement, ¶ IV(E), (H), (J)(2).

On October 23, 2023, ILYM received from Defendants a computerized list of 624 Class Members.  Polites Decl., ¶ 5.  ILYM formatted the list for mailing purposes, removed duplicate records, and processed the names and addresses through the National Change of Address Database to update any addresses on file with the United States Postal Service.  Polites Decl., ¶¶ 6-7.

On October 31, 2023 ILYM caused the Notice to be printed and mailed to the 624 names on the original class list.  ILYM delivered the Notices to the United States Post Office.  Polites Decl., ¶ 7.

In addition, since the mailing date, 52 Notices have been returned by USPS to ILYM as bearing undeliverable addresses.  ILYM performed advanced address searches for this Notice and was able to remail the Notice for 22 Class Members.  ILYM received 22 re-mail requests from Class Members.  However, according to ILYM 30 Notices remain undeliverable.  Polites Decl., ¶¶ 9-10.

The postmark deadline for filing requests for exclusion, objections, and disputes of the employment information provided in the Notice is December 29, 2023.  To date, ILYM has received zero requests for exclusion.  Notably, ILYM has not received any objections to the Settlement.  Polites Decl., ¶¶ 11, 12.

////

////

# VI.  LEGAL ARGUMENT

## A.     *The Settlement Meets the Criteria for Final Approval.*

Courts strongly favor settlement, particularly in complex class actions.  *Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1276; *see also Churchill Vill., LLC*. V. Gen. Elec. (9th Cir. 2004) 361 F.3d 566, 576.  Approval of a class action settlement rests in the sound discretion of the trial court.  *Hanlon v. Chrysler Corp*. (9th Cir. 1998) 150 F.3d 1011, 1026.

In determining final approval, the court's inquiry is whether the settlement is "fair, adequate, and reasonable."  Fed. R. Civ. P. 23(e)(2).  A class action settlement meets this standard when "the interests of the class are better served by the settlement than by further litigation."  Manual for Complex Litigation (Fourth) § 21.61 (2004).  Rule 23(e)'s primary concern is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  *Ma v. Covidien Holding, Inc.* (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 76359, *4.  However, rather than reaching any conclusions on the contested legal and factual issues, a court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Villegas v. J.P. Morgan Chase & Co.,* (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 166704, *15-16.

In deciding whether a class action settlement is fair, adequate and reasonable, courts in the Ninth Circuit consider the following factors: (1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Rodriguez v. West Publ'g Corp*. (9th Cir. 2009) 563 F.3d 948, 963 (overruled on other grounds).

As discussed below, these factors weigh heavily in favor of final approval because the benefit of a considerable non-reversionary financial recovery of $650,000 distributed to 624 Class Members outweighs the risks, costs and delays inherent in further class action litigation.

### 1. The Settlement is Fair Given the Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Litigation.

The first, second, and third *Rodriguez* factors all support final approval of this Settlement. As to the first prong, Plaintiff faces the difficult task of proving that Class Members were misclassified as independent contractors. Plaintiff must convince the trier of fact that Defendants exerted so much control over Class Members that they should as a matter of law be deemed to be the employees of Defendants. Plaintiff must clear this significant hurdle before even beginning to approach the issue of proving the asserted labor code violations. The uncertainty over whether Plaintiff will be able to achieve class certification, whether Class Members will be deemed to be employees of both (or either) Defendants, and whether Plaintiff will be able to prove the asserted labor code violations make this $650,000 settlement amount for 624 Class Members a genuinely "fair, adequate, and reasonable" result.

Plaintiff alleges that Defendants improperly misclassified the Putative Class Members as independent contractors exempt from minimum wage, overtime, meal and rest period laws, and the wider protections of the California Labor Code and wage orders. Although Plaintiff believes he has a strong case, further litigation carries numerous risks and obstacles for Plaintiff and Putative Class Members, as described below. Boyamian Decl., ¶ 11.

Plaintiff contends Class Members suffered injuries as a result of Defendants misclassifying them as independent contractors when they were actually employees. If Plaintiff were to establish the employment relationship between Defendants and the Putative Class, Plaintiff contends that Defendants would owe the Contract

Carriers, Drivers, and Helpers substantial compensation for violation of California's wage and hour laws as no attempt is made by Defendants to track the Putative Class's hours of work, ability to take meal and rest breaks, or reimbursement of the Class's work expenses.  Boyamian Decl., ¶ 12.

In particular, many Class Members such as Contract Carriers, were forced to cover the costs for truck insurance, fuel, vehicle maintenance, and cell phones used to communicate with dispatch.  Plaintiff's investigation and the discovery conducted thus far has shown that Defendants imposed common policies, whether formally or through a course of conduct, where they and only they exerted significant control over the work of Class Members.  Nevertheless, Defendants disagree with this characterization, and if trial testimony reveals that contract carrier Class Members were somewhat insulated from Defendant's control, and that the truck owner Class Members were mostly exerting control over the contract carrier Class Members, class treatment in such a scenario may become untenable.  Boyamian Decl., ¶ 13.

However, the uncertainty over whether Plaintiff will maintain class certification and the appropriateness of class treatment, and whether Plaintiff will be able to prove the asserted labor code violation makes this $650,000 settlement amount for 624 Class Members a genuinely "fair, adequate, and reasonable" result.

The second *Rodriguez* factor also supports the final approval of this settlement. First, Plaintiff may not be able to certify the Putative Class under Rule 23(b). Plaintiff largely relies on the Defendant's uniform business practices that treat the Putative Class Members as non-employees or independent contractors to establish both commonality and predominance.  Plaintiff will also argue that other common issues also predominate, such as whether the job expectations and degree of control exercised by Defendants upon the Contract Carriers, Drivers, and Helpers are uniform across the Class.  Boyamian Decl., ¶ 14.

////

Even if Plaintiff can show that Contract Carriers, Drivers, and Helpers were not independent contractors, Defendants can assert numerous defenses regarding liability and damages.  For instance, Defendants contend that the Contract Carriers with which they contracted to perform delivery services employed Drivers and Helpers, creating both a conflict within the class if pursued, and also shifting liability away from Defendants.  Boyamian Decl., ¶ 15.

With regard to Plaintiff's claims for wage statement and waiting time penalties, both claims are derivative of Plaintiff's primary wage claims.  Thus, Plaintiff would recover nothing for himself, or the Class, if the underlying claims are unsuccessful.  Boyamian Decl., ¶ 16.

Defendants' positions in this litigation may result in no recovery for Plaintiff and the Putative Class Members, or protracted appeals and significant risks to meaningful recovery for the Putative Class Members.  Consequently, the benefits of the settlement greatly outweigh the risks of continuing to litigate the issues in this case.  Boyamian Decl. ¶ 17.

Moreover, if this case ultimately reaches trial, the trial process itself is likely to be long and complicated.  As this is a misclassification case, Plaintiff must present evidence on the issue of whether Class Members are to be deemed the employees of Defendants.  Only after presenting evidence on the issue of employee or independent contractor status would Plaintiff begin presenting evidence on the asserted labor code violations.  As Plaintiff alleges claims for numerous violations, including unpaid overtime, meal break violations, rest break violations, unfair competition, and PAGA penalties, the trial length would be significant.  Boyamian Decl. ¶ 18.

Finally, the third *Rodriguez* factor also favors approval of the instant settlement.  While Plaintiff contends that Settlement Class Members were misclassified, it is nevertheless true that the way each Contract Carrier conducted operations, including from the Drivers and Helpers it formally employed, varied to an extent between them.  For the Contract Carriers themselves, the nature of their work

was less consistent than with Drivers and Helpers. Thus, even if most or all of the Contract Carriers, Drivers, and Helpers can be said to have been misclassified, whether class certification outside of the settlement context under Rule 23 would be granted is a very different question. Thus, while the $650,000 gross settlement amount appears at first glance to be a substantial discount on the maximum damages available, given the risks of this particular suit, the amount is extremely reasonable and results in a good settlement for the putative class. Put differently, if trial testimony shows that the amount of control that Defendants had over Class Members varied based on the way each Contract Carrier conducted operations varied, the suit may then be deemed inappropriate for class treatment. Boyamian Decl., ¶ 19.

### 2. The Settlement Consideration and Allocation are Fair.

ILYM has preliminarily calculated the class member settlement awards based on a Net Settlement Amount of $414,437.83 and 624 participating Class Members. Specifically, the net settlement sum was calculated by subtracting the requested attorneys' fees ($162,500.00), the amount allocated for litigation costs and expenses ($18,012.17), the requested Enhancement Payment ($10,000.00), the requested Settlement Administration Costs ($12,550.00), the LWDA Payment ($24,375.00) and the PAGA Class Payment ($8,125.00) from the Gross Settlement Amount ($650,000.00). Polites Decl., ¶ 15.

In addition, to date, 38 Class Members have submitted timely and valid Payment Information Forms. The aggregate of the Individual work weeks worked by all Settlement Class Members is 20,752. Approximately 2,963 work weeks, representing 14.28% of the total work weeks are collectively attributable to 38 Valid Claimants. Claimants have specifically claimed approximately $59,174.02 or 14.28% of the Net Settlement Proceeds. Polites Decl., ¶¶ 17-18.

Based on the above calculations, the average claim value for 624 participating Class Members with a $414,437.83 Net Settlement Amount is $644.16, and the highest individual settlement payment will be $4,533.41. Polites Decl., ¶ 19.

1    "[I]t is well-settled law that a cash settlement amounting to only a fraction of

2    the potential recovery does not per se render the settlement inadequate or unfair.

3    Rather, the fairness and the adequacy of the settlement should be assessed relative to

4    risks of pursuing the litigation to judgment." *Villegas*, 2012 U.S. Dist. LEXIS

5    166704 at *16. (internal quotations and citations omitted).

6         Case law demonstrates that even a fractional recovery may be fair and

7    reasonable depending on the circumstances of the case. *See Balderas v. Massage*

8    *Envy Franchising, LLC* (N.D. Cal. July 21, 2014) 2014 U.S. Dist. LEXIS 99966, *16

9    (preliminarily approving settlement "on the low end of the spectrum for class

10   settlement awards receiving approval" where gross settlement amount of $504,000

11   "represents roughly eight percent of the maximum recovery" and net settlement

12   amount of $325,000 represents "just five percent."); *O'Sullivan v. AMN Services,*

13   *Inc*. (N.D. Cal. Feb. 7, 2014) 12-cv-2125 (ECF No. 92) ($3 million gross settlement

14   amount for a class of 11,685 people – total exposure estimated for the case was $108

15   million, before penalties and interest); *Scott v. Bimbo Bakeries* USA (E.D. Pa.

16   March 5, 2014) No. 2:10-cv-03154 (ECF No. 174) (approving settlement of wage

17   and hour claims alleging independent contractor misclassification for payments of

18   $900 to each current driver and $450 to each former driver*); Bautista v. Harvest*

19   *Management Sub* (C.D. Cal. July 7, 2014) No. 2:12-cv-10004 (ECF No. 79) (final

20   approval of a $2.2 million gross settlement amount for wage-and hour violation

21   claims of 14,000-member class).

22        Accordingly, as set forth in Plaintiff's Motion for Preliminary Approval and

23   based on the settlement administrator's calculation of the projected individual

24   recoveries, the amount in settlement here is reasonable given the strength of

25   Plaintiff's claims and the risks, expenses, and complexity of continued litigation as

26   described above. Boyamian Decl., ¶ 20.

27        The plan of allocation is also fair and reasonable. The Settlement provides

28   that the settlement fund shall be allocated based, for all intents and purposes, the

length of work of the participating Class Member during the time period encompassed by the suit. Boyamian Decl., ¶ 21.

### 3. The Settlement Reflects the Informed Views of Experienced Counsel and Is the Product of Serious, Arms-Length Negotiations Conducted After Extensive Discovery and Investigation.

The fifth and sixth *Rodriguez* factors—the informed views of counsel and the discovery conducted to date in the litigation—also support final approval of the Settlement.

Prior to filing the complaint, Class Counsel was readily familiar with Pilot, having filed similar wage and hour class action lawsuits against other locations in California owned and operated by Defendants. From before they filed suit, but especially in the months leading up to mediation, Plaintiff's Counsel conducted a thorough investigation into the relevant facts and legal claims. Plaintiff's Counsel formulated a list of documents and data they would need from Defendants in order to conduct a meaningful mediation. Boyamian Decl., ¶ 22.

After meeting and conferring with Defense Counsel on this matter, Defendants informally produced substantial amounts of data and documentary evidence to Plaintiff. With this data, Plaintiff's Counsel consulted with an expert in advance of mediation to determine the amount of damages potentially available to Putative Class Members based on the scope of wage and hour violations, assuming Plaintiff successfully established misclassification. Through the efforts of Plaintiff himself, Plaintiff's Counsel was also able to contact various other Contract Carriers, Drivers, and Helpers of Defendants, thus allowing Plaintiff's Counsel to gain a better understanding of the strengths and weaknesses of the case before attending mediation. Boyamian Decl., ¶¶ 23, 24.

After a full day of mediation, with the extensive efforts and assistance of the mediator, Francis J. Ortman III, the Parties were able to reach a settlement in principle on December 2, 2022. Settlement Class Counsel's experience in litigating

numerous independent contractor misclassification suits and the documents and data exchanged by the Parties in the lead up to mediation informed Plaintiff's Counsel decision to endorse the $650,000 gross settlement amount. Although the Parties agreed upon a settlement figure on December 2, 2022, negotiations regarding the specific terms of the agreement continued into May 2023. Boyamian Decl., ¶ 25.

Class Counsel is experienced in class action litigation and focuses on employment wage and hour matters. Under these circumstances, Class Counsel's assessment that the Settlement is fair, adequate, and reasonable is worthy of deference. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 4. The Lack of Opposition by the Class Supports Approval.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Technologies, Inc.* (N.D. Cal. 2008) 559 F. Supp. 2d 1036, 1043 (internal citations omitted).

As described above, pursuant to the Court's preliminary approval order, ILYM mailed the Notice to all Settlement Class Members identified through the data provided by Defendants. Polites Decl., ¶ 7. The deadline to object to the Settlement and the deadline to opt-out from the Settlement is December 29, 2023. To date, ILYM has received zero objections and zero opt-outs to the Settlement. Polites Decl., ¶¶ 11-12.

A 100% participation rate and 0% objection rate supports the view that the Settlement is fair and reasonable. *Barcia v. Contain–A–Way, Inc.* (S.D. Cal. 2009) 2009 U.S. Dist. LEXIS 17118, *12 (absence of objectors "strongly supports the fairness, reasonableness, and adequacy of the settlement").

////

**B.**    ***Confirmation of the Court's Provisional Class Certification is Appropriate***

Plaintiff also requests that the Court confirm its provisional certification order and find that the proposed Settlement Class meets all the requirements under Rule 23.  Specifically, Plaintiff asks the Court to finally certify the following class for settlement purposes:

> "(a) all individuals who provided services for Pilot and Best Buy (as those entities are defined below) as contract carriers, drivers and/or helpers in the State of California and (b) all entities owned and controlled by contract carriers which contracted directly with Pilot and provided delivery services for Best Buy (as those entities are defined below) from March 28, 2017 through the date of preliminary approval of the Settlement. However, the Settlement Class shall exclude all individuals and entities who provided delivery services for Best Buy (as those entities are defined below) as contract carriers, drivers and/or helpers in the State of California exclusively prior to April 18, 2019 and who previously released claims through that date via the settlement in *Henriquez v. DSI Logistics, Inc.*, Los Angeles Sup. Ct. No. BC714165 (final approval granted Nov. 25, 2019)."

Settlement Agreement sec. II.C.  However, the settlement class excludes:

> "… all individuals and entities who provided delivery services for Best Buy (as those entities are defined below) as contract carriers, drivers and/or helpers in the State of California exclusively prior to April 18, 2019 and who previously released claims through that date via the settlement in *Henriquez v. DSI Logistics, Inc.*, Los Angeles Sup. Ct. No. BC714165 (final approval granted Nov. 25, 2019)."

Dkt. 53 at 2–3.

The provisionally certified class satisfies each of the certification requirements that: (1) the individuals in the settlement Class are so numerous that joinder would be impracticable (624 settlement Class Members); (2) there are common questions of law or fact common to the class; (3) Plaintiff's claims are typical of the claims of the absent settlement class members; and (4) Plaintiff and his counsel will adequately and fairly represent the interests of the absent settlement class members.  *Hanlon*, 150 F.3d at 1019.  In addition, Plaintiff has established that the Class is maintainable under Rule 23(b)(3) because common questions "predominate over any questions affecting only individual members," and class resolution "is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R.

Civ. Pro. 23(b)(3).  Accordingly, Plaintiff requests that the Court finally certify the class for settlement purposes under Rule 23.

### C.    *The Court-Ordered Notice Program Is Constitutionally Sound.*

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all Class Members who would be bound by a propos[ed settlement]."  Fed. R. Civ. P. 23(e)(1) Fed. R. Civ. P. 23(e)(1).  Class Members are entitled to receive "the best notice practicable" under the circumstances.  *Burns v. Elrod* (7th Cir. 1985) 757 F.2d 151, 154.  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C.,* 361 F.3d at 575 (internal citations omitted).  Moreover, notice that is mailed to each member of a class "who can be identified with reasonable effort" constitutes reasonable notice.  *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156, 177.  For any certified Rule 23(b)(3) class, the notice must inform Class Members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded."  Fed. R. Civ. P. 23(c)(2)(B).

The final Notice, submitted as Exhibit "A" to the Settlement, explains the nature of the action and the terms of the Settlement (including the Settlement Amount, how individual Settlement awards will be calculated, the attorneys' fees to be paid, the claims that will be released).  It also explains how the Class Members may receive a portion of the Settlement, be excluded from the Settlement, or object to the Settlement.  This information satisfies Rule 23(e).  *See*, *e.g.*, *Villegas 2012 U.S. Dist. LEXIS* 166704, at * 23 (approving a notice containing the same categories of information).

The notice plan provided for in the Settlement and approved by the Court in its August 15 Order satisfies the notice standard for all persons who were mailed notice.  Class Counsel formatted this Notice in an easy-to-read manner.  The Notice encouraged Class Members to contact the Settlement Administrator or Class Counsel

14

with any questions and provided their names, telephone numbers, and mailing addresses.  Polites Decl., ¶ 7, Exhibit "A".

Accordingly, the Notice and Notice plan fulfilled all requirements of adequate notice and should be duly approved.  *See Torrisi v. Tucson Elec. Power Co.* (9th Cir. 1993) 8 F.3d 1370, 1374-75; Fed. R. Civ. P. 23(c)(2).

## VII.    CONCLUSION: THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THIS SETTLEMENT

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Respectfully Submitted,

Dated: December 19, 2023                BOYAMIAN LAW, INC.


By:  /s/ Michael H. Boyamian
     MICHAEL H. BOYAMIAN
     Attorneys for Plaintiff and the Settlement Class


**Signature Attestation**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from Michael H. Boyamian of Boyamian Law, Inc.

DATED:   December 19, 2023         **BOYAMIAN LAW, INC.**


By:    /s/ Armand R. Kizirian
       Armand R. Kizirian
       Attorneys for Plaintiff and the
       Settlement Class