1
2
3
4

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

5
6
7

| | |
|---|---|
| **CHRISTIAN MATUTE**, INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY SITUATED INDIVIDUALS**,** Plaintiff**,** vs. **PILOT AIR FREIGHT LLC** DBA **PILOT FREIGHT SERVICES,** A PENNSYLVANIA LLC**; BEST BUY CO., INC.,** A MINNESOTA CORPORATION, ET AL.**,** Defendants**.** | CASE NO. **22-CV-00587-YGR** **ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS; AND JUDGMENT** Dkt. Nos. 55, 56 |

8
9
10
11
12
13
14
15

The Court previously granted a motion for preliminary approval of the Class Action Settlement between plaintiff Christian Matute and defendants Pilot Air Freight LLC d/b/a Pilot Freight Services ("Pilot") and Best Buy Co., Inc. ("Best Buy") (collectively "Defendants"), on August 15, 2023. (Dkt. No. 53.) As directed by the Court's preliminary approval order, on November 29, 2023, plaintiffs filed their unopposed motion for attorneys' fees, costs, and service awards. (Dkt. No. 55.) Thereafter, plaintiff Matute filed his unopposed motion for final settlement approval on December 19, 2023. (Dkt. No. 56.) The Court held a hearing and took arguments from the parties on February 27, 2024.

Having considered the motion briefing, the terms of the Settlement Agreement, the response thereto, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representative and class counsel are confirmed.

The Motion for Attorneys' Fees, Costs, and Incentive Awards is **GRANTED.** The Court

16
17
18
19
20
21
22
23
24
25
26
27
28

ORDERS that class counsel shall be paid $162,500 in attorneys' fees and $18,460.45 in litigation costs and class representative and named plaintiff Christian Matute shall be paid $10,000 incentive award.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed this class action lawsuit to address his claim that he and the class he seeks to represent are employees of defendants, and the defendants consistently failed to pay plaintiff and contract carriers, truck drivers, and helpers for all hours worked, including overtime, and that they were not provided meal and rest periods.

Plaintiff's claims stem from the allegation that he and class members were employees improperly classified by defendants as independent contractors. Plaintiff alleges claims for failure to pay minimum wage, failure to pay overtime, failure to reimburse employment expenses, unlawful deduction from wages, failure to provide meal periods, failure to allow rest periods, failure to furnish accurate wage statements, waiting time penalties, and unfair competition, as well a PAGA action. (*See* Dkt. No. 1-1, Complaint ("Comp.")

Defendants removed this case from Alameda County Superior Court on January 28, 2022. (Dkt. No. 1.) Parties then attended an early mediation before Francis J. Ortman III. (Dkt. No. 37-1, Kizirian Decl., ¶ 12.) As has become common practice, in preparation for mediation, defendants disclosed to plaintiff substantial documentation and data. Plaintiff also consulted with an expert in advance of mediation to determine the amount of damages potentially available to putative class members based on the scope of wage and hour violations, assuming plaintiff successfully established misclassification. Counsel also communicated with plaintiff and various class members. Parties reached a settlement in principle with the assistance of an experienced mediator on December 2, 2022, but continued to work out details through May 2023. (*Id.* at ¶ 14.) The Settlement Agreement, attached hereto as **Exhibit 1**, defines the class as:

> (a) all individuals who provided services for Pilot and Best Buy (as those entities are defined below) as contract carriers, drivers and/or helpers in the State of California and (b) all entities owned and controlled by contract carriers which contracted directly with Pilot and

> provided delivery services for Best Buy (as those entities are defined below) from March 28, 2017 through the date of preliminary approval of the Settlement. However, the Settlement Class shall exclude all individuals and entities who provided delivery services for Best Buy (as those entities are defined below) as contract carriers, drivers and/or helpers in the State of California exclusively prior to April 18, 2019 and who previously released claims through that date via the settlement in *Henriquez v. DSI Logistics, Inc.*, Los Angeles Sup. Ct. No. BC714165 (final approval granted Nov. 25, 2019).

Settlement Agreement sec. II.C.  This class excludes:

> . . . all individuals and entities who provided delivery services for Best Buy (as those entities are defined below) as contract carriers, drivers and/or helpers in the State of California exclusively prior to April 18, 2019 and who previously released claims through that date via the settlement in *Henriquez v. DSI Logistics, Inc.*, Los Angeles Sup. Ct. No. BC714165 (final approval granted Nov. 25, 2019).

*Id*,[1]  ("the Settlement Class").  In its preliminary approval order, the Court conditionally certified the Settlement Class and provisionally appointed Michael H. Boyamian and Armand R. Kizirian of Boyamian Law, Inc. as Class Counsel, plaintiff Matute as class representative, and ILYM Group, Inc. ("ILYM") as the settlement administrator.  (Dkt. No. 53 at 4, 6.)

### B.    Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, defendant will pay $650,000 into a common settlement fund, without admitting liability.  This amount includes attorneys' fees and costs, the cost of class notice and settlement administration, the class representative's service award, and payroll taxes on the portion of the settlement payments deemed wages.

#### 1.    Attorneys' Fees and Costs

Under the Settlement Agreement, Plaintiff's counsel agreed to seek up to $162,500 in attorneys' fees and $18,460.45 in costs.  The common settlement fund also includes a provision for $12,550 in settlement administration costs; and up to $10,000 to be paid to plaintiff Christian Matute as an incentive award in exchange for a general release of all claims against defendant.

#### 2.    Class Relief

---

[1] This class definition is essentially the same as that in the complaint, but for the addition of the *Henriquez* exception.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    After deductions from the common fund for fees, costs, and service incentive awards,

2    approximately $422,562.83 will remain to be distributed among the participating class members.

3    Class members will be paid according to the amount of time they spent as members of the class.

4    Dividing this amount across the 624 participating class members yields an average recovery of

5    approximately $677.18 per class member.  The Agreement provides that no amount will revert to

6    defendant.

7                    ***3.***        ***Cy Pres/Remainder***

8    The Settlement Agreement provides that when checks mailed to participating class members

9    are not redeemed or deposited within 180 days, the check will be void and a stop payment order may

10    be placed on the check.  After 180 days, any funds from any unredeemed checks will be paid to the

11    *cy pres* recipient, the Settlement Administrator to the California State Controller's Office Unclaimed

12    Property Fund.  In exchange for the settlement awards, class members will release claims against

13    defendants as set forth in the Settlement Agreement at section VI.

14    **C.    Class Notice and Claims Administration**

15    The Settlement Agreement is being administered by ILYM Following the Court's

16    preliminary approval and conditional certification of the settlement, ILYM mailed the notice to 624

17    class members.

18    The Class Administrator also established a settlement website (the "Settlement Website") at

19    www.https://ilymgroup.com/Pilot, including the settlement notices, the procedures for class

20    members to submit claims or exclude themselves, a contact information page that includes address

21    and telephone numbers for the claim administrator and the parties, the Settlement Agreement, and

22    the signed order of preliminary approval. The Class Administrator also operated a toll-free number

23    for class member inquiries.

24    Class members were given until December 29, 2023, to object to or exclude themselves from

25    the Settlement Agreement.  Out of 624 total class members zero persons filed timely requests to opt

26    out of the Settlement Class, as of December 19, 2023, when parties moved for final approval of class

27    action settlement.

28

United States District Court
Northern District of California

1  **II.    FINAL APPROVAL OF SETTLEMENT**

2  **A.    Legal Standard**

3  A court may approve a proposed class action settlement of a class only "after a hearing and

4  on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class

5  certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not

6  address whether the settlement is ideal or the best outcome, but only whether the settlement is fair,

7  free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v.*

8  *Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to

9  assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense,

10  complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

11  throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and

12  the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a

13  government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at

14  1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.

15  2004).

16  Settlements that occur before formal class certification also "require a higher standard of

17  fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such

18  settlements, in addition to considering the above factors, a court also must ensure that "the

19  settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*

20  *Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

21  **B.    Analysis**

22  **1.    *The Settlement Class Meets the Prerequisites for Certification***

23  As the Court found in its order granting preliminary approval and conditional certification of

24  the settlement class herein, the prerequisites of Rule 23 have been satisfied purposes of certification

25  of the Settlement Class. (*See* Dkt. No. 53 at 2-4.)

26  **2.    *Adequacy of Notice***

27  A court must "direct notice of a proposed class settlement in a reasonable manner to all class

28  members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be

notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court requested changes to the parties' initial proposed notice. It thereafter found the parties' modified proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Class members of the settlement and their rights to object or exclude themselves. (Dkt. No. 53 at 5.) Pursuant to those procedures, the Class Administrator carried out that program by causing the approved notice to be mailed to addresses associated with the 624 class members. (Dkt. No. 56 at 4.) The Class Administrator reports that 52 notices were returned as bearing undeliverable addresses. (*Id.*) The Class Administrator performed a computerized skip trace on those 52 returned notices to obtain updated addresses for the class members associated with those returned notices. (Dkt. No. 56-2 at ¶ 8.) As a result of that skip trace, the Class Administrator obtained 22 updated addresses and re-mailed the notice to the class members associated with those 22 addresses. (*Id.* at ¶ 9.)

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### 3. The Settlement Is Fair And Reasonable

As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats class members equitably relative to one another. (Dkt. No. 53 at 1, 5.)

United States District Court
Northern District of California

6

The reaction of the class was overwhelmingly positive. The Court received no objections and no opt-outs as of the filing of the motion for final approval, submitted on December 19, 2023. The deadline for objecting or opting out was December 29, 2023. (Dkt. No. 56 at 1.) "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

In its preliminary approval order, the Court approved the proposed plan of allocation. (Dkt. No. 53. at 5.) That plan is to allocate the settlement based upon the number of workweeks that Settlement Class Members worked in the statutory period. (*Id.*) The Court finds the plan of allocation to be fair and reasonable and to treat class members equitably and therefore approves that plan of allocation.

### 4. Objections

Zero individuals submitted objections. (Dkt. No. 56 at 1.)

### 5. Certification Is Granted and the Settlement Is Approved

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper. The following persons are excluded from the Settlement Class: All individuals and entities who provided delivery services for Best Buy (as those entities are defined below) as contract carriers, drivers and/or helpers in the State of California exclusively prior to April 18, 2019 and who previously released claims through that date via the settlement in *Henriquez v. DSI Logistics, Inc.*, Los Angeles Sup. Ct. No. BC714165 (final approval granted Nov. 25, 2019).

The *cy pres* recipient, the California State Controller's Office Unclaimed Property Fund, is **APPROVED**.

### 6. Settlement Agreement Modification

Paragraph IV(J)(3) of the Settlement Agreement requires the settlement administrator to

pay Settlement Shares (as defined in the Settlement Agreement) only to those class members for whom the settlement administrator has a tax identification number. However, with the agreement of the parties, the Court finds and determines that, in order to maximize the recovery to as many class members as possible, the settlement administrator shall issue Settlement Shares of up to $600 to all class members even if the settlement administrator has no tax identification number on file for a class member, in compliance with Internal Revenue Service rules. In all other respects, Paragraph IV(J)(3) of the Settlement Agreement shall remain in full force and effect.

### III.   MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Class counsel requests an attorneys' fee award of $162,500. The attorneys' fees sought amount to 25% of the gross settlement amount. Defendants do not oppose the fee request.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in

United States District Court
Northern District of California

1   the relevant community.'").  Under the percentage-of-the-fund method, courts in the Ninth Circuit

2   "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing

3   adequate explanation in the record of any 'special circumstances' justifying a departure."  *In re*

4   *Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d

5   1301, 1311 (9th Cir. 1990)).  The benchmark should be adjusted when the percentage recovery

6   would be "either too small or too large in light of the hours devoted to the case or other relevant

7   factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.  When using the percentage-of-recovery

8   method, courts consider a number of factors, including whether class counsel " 'achieved

9   exceptional results for the class,' whether the case was risky for class counsel, whether counsel's

10  performance 'generated benefits beyond the cash settlement fund,' the market rate for the

11  particular field of law (in some circumstances), the burdens class counsel experienced while

12  litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled

13  on a contingency basis."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir.

14  2015) (quoting *Vizcaino*, 290 F.3d at 1047-50.  "[T]he most critical factor [in determining

15  appropriate attorney's fee awards] is the degree of success obtained."  *Hensley v. Eckerhart*, 461

16  U.S. 424, 436 (1983).

17         No objector has challenged any of counsel's hour or rates.

18         Using the percentage-of-the-fund method, the Court finds the attorneys' fees sought to be

19  reasonable.  The Court has also considered a cross-check using the lodestar method.

20         Here, the parties estimated the total settlement value to be $162,500 based on the

21  percentage-of-recovery method.  The attorneys' fees requested would come to 25% of this total.

22  This amount matches the 25% benchmark.

23         Based on the foregoing, the Court finds an award of attorneys' fees in the amount of

24  $162,500 to be fair, reasonable, and adequate.  By way of cross-check, plaintiffs indicate that they

25  have expended $196,385 which is higher than their fee request of $162,500.  (Dkt. No. 55 at 14.)

26  One lead attorney for the class incurred 124 hours at an hourly rate of $750, equaling $93,000.

27  (Dkt. No. 55-1, ¶ 21.)  The other lead attorney spent 179.8 hours at a rate of $575 per hour,

28  equaling $103,385.  (*Id.*).  On the basis of these reasonable hourly rates and amounts, class

United States District Court
Northern District of California

1    counsel calculate the lodestar to be $196,385.  The Court finds that the hours claimed were

2    reasonably incurred and that the rates charged are reasonable and commensurate with those

3    charged by attorneys with similar experience in the market.  The Court also finds that Class

4    Counsel represented their clients with skill and diligence and obtained an excellent result for the

5    class, taking into account the possible outcomes and risks of proceeding trial.

6    **B.    Costs Award**

7        Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses.  Fed. R.

8    Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may

9    recover reasonable expenses that would typically be billed to paying clients in non-contingency

10   matters).  Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by

11   law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Here, class counsel seeks reimbursement

12   for litigation expenses, and provides records documenting those expenses, in the amount of

13   $18,460.45.  The Court finds this amount reasonable, fair, and adequate.

14   **C.    Incentive Award**

15       The district court must evaluate named plaintiff's requested award using relevant factors

16   including "the actions the plaintiff has taken to protect the interests of the class, the degree to

17   which the class has benefitted from those actions . . . [and] the amount of time and effort the

18   plaintiff expended in pursuing the litigation."  *Staton*, 327 F.3d at 977.  "Such awards are

19   discretionary . . . and are intended to compensate class representatives for work done on behalf of

20   the class, to make up for financial or reputational risk undertaken in bringing the action, and,

21   sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. West*

22   *Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).  The Ninth Circuit has emphasized that

23   district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the

24   adequacy of the class representatives."  *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163

25   (9th Cir. 2013).

26       Here, the plaintiff came forward to represent the interests of 624 others, with very little

27   personally to gain, as the class's average individual alleged damages were $677.18.  Plaintiff

28   compiled documents, signed a broader release than the other class members, helped class counsel

understand the work he performed and the nature of defendants' delivery operations, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others. Thus, the Court approves the requested incentive award payment for plaintiff $10,000.

**IV.    CONCLUSION**

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED IN PART** as follows: Class Counsel is awarded $162,500 in attorneys' fees and $18,460.45 in litigation costs. Plaintiff Christian Matute is granted an incentive award of $10,000.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on August 18, 2023, and this order. This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than October 4, 2024. The Court **SETS** a compliance deadline on **October 11, 2024** on the Court's 9:01 a.m. calendar to verify timely filing of the post-distribution accounting.

**IT IS SO ORDERED.**

This terminates Docket Nos. 55 and 56.

Dated:  April 5, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

11